MEEHAN v. ATLAS SAFE MOVING & MACHINERY TRUCKAGE CO.

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

1. INJURY TO EMPLOYÉ—DEFECTIVE APPLIANCES—INSPECTION.

Independently of, as well as under, the employers' liability act (Laws 1902, p. 1748, c. 600), an employer engaged in moving safes has the duty of making reasonable inspection of a jack, consisting of a piece of hickory timber, to which the tackle used in raising the safes is attached, which the jury are authorized to find he did not discharge; the timber having broken from dry rot, killing the employé; there being evidence that hickory was peculiarly susceptible to dry rot, but that its progress was extremely gradual; that it was not discoverable by external examination, but only by boring; and that the only inspection made was by the employés themselves when the jack was in actual use, which was done by raising the weight a foot or two, and then shaking it to see whether the tackle and jack would stand the strain to which it was being subjected.

2. SAME—NEGLIGENCE OF EMPLOYÉ.

An employé engaged in moving safes, killed by the breaking of timber used therein, by the presence of dry rot, not observable from the outside, was not charged with any duty of inspection, or with negligence in failing to discover the defects.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary L. Meehan, administratrix of James Meehan, deceased, against the Atlas Safe Moving & Machinery Truckage Company. From a judgment entered on dismissal of the complaint at the close of plaintiff's case, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Herbert C. Smyth, for appellant.
H. Snowden Marshall, for respondent.

HATCH, J. The accident which occurred in this case resulted in the death of plaintiff's intestate, and the action is brought to recover damages upon the averment that the death was due to the negligence of the defendant. It appeared that for a number of years prior to the 22d day of April, 1903, the day upon which the accident occurred,

¶ 2. See Master and Servant, vol. 34, Cent. Dig. §§ 714, 717.

plaintiff's intestate had been in the employ of the defendant as a foreman, and had been engaged in the business of moving safes. At the time of the accident, plaintiff's intestate was engaged in hoisting a safe from the sidewalk into the second story of a building situate on the southwest corner of Dey street and Broadway, in the borough of Manhattan, city of New York. In the performance of this work the deceased was using a block and fall which were attached to a jack; the latter being a piece of hickory timber about eight feet long and six inches square, and was supported across a window in a story above that into which the safe was being hoisted. The block and fall were attached to the jack, so that the entire weight of the safe rested thereon while it was being raised into a position opposite the window of the second story, into which it was to enter. At the time of the accident the safe had been raised to the window, and was hanging there motionless while some iron skids were being placed in position, upon which it was to be moved through the window. While in this position, and without warning, the jack broke, the safe fell to the pavement below, and the deceased was knocked off from the scaffolding upon which he was standing, opposite the window through which the safe was to pass, and he was thrown to the pavement below, receiving injuries from which he died. It appeared without dispute that the jack was permeated with dry rot, which rendered it insufficient in strength to sustain the weight of the safe, which was 4,600 pounds. Evidence was given tending to establish that, had the timber in the jack been sound, it would have safely supported a weight of over 9,000 pounds, and that the breaking strain would be about 28,000 pounds. It further appeared that the defendant furnished and had on hand at its place of business a large number of these jacks, from which the foreman and men in its employ made selection indifferently as they were required for use, and that the jack which broke had been upon the truck in use by the men, of whom the deceased was the foreman, for at least three months. Testimony was also adduced tending to establish that dry rot was slow in progress, and that, from the appearance of this jack, the timber had been affected for two or three years in reaching the stage which was found to exist after the break. Evidence was further given tending to establish that this affection of the wood was not observable from the outside; that the dry rot began from within, at the center, and worked to the outside; that, while the whole interior of the timber could be affected, the shell would remain hard and firm, and observation from the outside would not disclose the existence of the defect; that the only method by which the dry rot could be detected was by boring either into the end of the timber, or through the outer shell; and that no other tests were available to determine such condition. It was undisputed that the defendant had no system whatever of inspection for the purpose of determining the safety of these jacks; that the only test to which the timber was ever subjected was by the employés themselves at the time when the jack was in actual use, which was done by raising the weight a foot or two, and then shaking it to see whether any part of the tackle or the jack would not stand the strain to which it was then being subjected. It

is easy to see that this test could only be effectual in determining that, at the particular time when the strain was placed upon the jack, it had sufficient sustaining power to hold the weight in that position; but it is evident that such test would not determine whether the jack was affected by dry rot unless it broke at the time when the test was made. This jack was made of hickory timber, and it appeared that this wood is more susceptible to dry rot than are any of the hard woods commonly in use. The complaint was framed upon the theory of an action under the employers' liability act, and it averred that prior to the commencement of the action a notice of the time, place, and cause of the accident was served by the plaintiff upon the defendant. Employers' Liability Act (page 1748, c. 600, Laws 1902). The defendant offered no evidence in its defense, and, upon the close of plaintiff's proof, moved to dismiss the complaint upon the ground that the plaintiff had failed to show any negligence upon the part of the defendant, and that, inasmuch as the defect which had been shown to exist in the jack was latent in character, it could not have been discovered by reasonable inspection, and that therefore such inspection would not have availed to show the defect, and was therefore not required. The court thereupon granted the motion and dismissed the complaint. The plaintiff asked to go to the jury upon the question of the defendant's negligence, and of the absence of negligence upon the part of the deceased contributing to the accident, under the employers' liability act, and also upon the question as to whether the deceased assumed the risk of the sufficiency of the jack. It did not appear that any claim was made by the defendant that the deceased was guilty of any affirmative act constituting contributory negligence upon his part.

Quite independent of the employers' liability act, we think a case was presented which required the submission of the question of defendant's negligence to the jury. In Byrne v. Eastman's Co. of N. Y., 163 N. Y. 463, 57 N. E. 738, it was said by Judge Landon, writing for the court:

"It was the defendant's duty to furnish to its employés good and suitable appliances, and to use reasonable care to keep them so. [Citing cases.] Reasonable care involves proper inspection, and negligence in respect of it, in such cases as this, is the negligence of the master, and none the less so when the inspection is committed to a servant. [Citing cases.]"

Therein the defective appliance consisted of a broken flange upon a grooved iron wheel, which moved upon an iron rail or track above the floor, and was used for the purpose of carrying sides of beef from one point to another. The plaintiff was injured by reason of the wheel with the defective flange leaving the track, and falling with its load upon the plaintiff as he was underneath, and by the side of the track, for the purpose of removing the beef when it reached its point of destination. It was shown that there was some inspection made in that case, as the wheels were from time to time examined by the workmen for the purpose of being oiled, when defective wheels were thrown out. The system, however, was quite imperfect, and the court held that the plaintiff was entitled to go to the jury upon the question as to the defendant's negligence in making proper inspection of the

wheels, and that the jury would be authorized to find that there was lack of reasonable care in this respect. In our view of this case, the facts are much stronger. Here it must be presumed that the defendant had knowledge that these jacks were made of timber which was peculiarly susceptible to dry rot, and that such defect was not discoverable by external examination, and could only be discovered by borings. The character of the business carried on was that of lifting heavy safes to considerable heights, and, unless the appliances furnished therefor were safe and suitable, the hazard of serious injury and loss of life was very great, not alone to the employés engaged in the work, but also to passers-by upon the street where the operations were conducted. Such a condition manifestly called for the exercise of an extraordinary degree of care in providing suitable, sound tools and appliances, and certainly, with knowledge that the wood used was likely to become infirm, and therefore unsafe and dangerous, imposed upon the defendant a duty to make some provision for inspection in order to insure secure, safe, and suitable tools and appliances. The utter disregard of duty in this respect would authorize the jury to find that the duty of furnishing these tools and appliances, and taking reasonable means to ascertain that they were at all times safe and secure, had been neglected, and unreasonably so, and thereby find that the defendant was guilty of negligence in furnishing the jack in question. The employers' liability act only adds to the gravity of the situation. Section 1 of that act provides that, where an employé is himself in the exercise of due care and diligence at the time, and he shall receive a personal injury—

"Subdivision 1. By reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer, or of any person in the service of the employer intrusted by him with the duty of seeing that the ways, works or machinery were in proper condition. * * *

"Subd. 2. The employee, or in the case the injury results in death, the executor or administrator of a deceased employee * * * shall have the same right of compensation and remedies against the employer as if the employee had not been employed or within the service of the employer nor engaged in his work."

Section 3 provides that an employé is presumed to have assented only to the necessary risks of the occupation or employment, and no others, and that these include only such risks as are inherent in the nature of the business, which remained after the employer has exercised due care in providing for the safety of his employés, and—

"The question whether the employee understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence."

As we have already observed, there is nothing in this case to show that the employé had failed in the exercise of due care and diligence at the time of the accident, and there is evidence that the defendant had. It is the claim of the defendant that the defect in the jack was not observable from the outside. Consequently the deceased could

not be chargeable with negligence for failing to discover the defect in the stick. The negligence consisted in failing to provide for such reasonable inspection as might have disclosed the infirmity. The deceased was not charged with any obligation or duty in this respect. The defendant was. Consequently, so far as the facts in the present, case are concerned, it is not necessary to determine whether the employers' liability act has increased the liability of the master for defective machinery and appliances. It is sufficient now to say that the jury were authorized to find that the defendant had not discharged the obligation which the law imposed upon him in providing for a reasonable inspection by which the defect would or might have been discovered. It is quite probable that if the deceased had knowledge of the infirmities existing in the jack, and then chose to make use of the same, he would be held to have assumed the risks incident to such use, notwithstanding the statute. McLaughlin v. Eidlitz, 50 App. Div. 518, 522, 64 N. Y. Supp. 193; Stewart v. Ferguson, 44 App. Div. 58, 60 N. Y. Supp. 429; Id., 34 App. Div. 515, 54 N. Y. Supp. 615. The cases relied upon by the defendant upon both branches of the question disclosed in this case are clearly distinguishable, and none of them hold that a defect is latent which may be discovered by reasonable inspection. On the contrary, such inspection is required in discharge of the duty imposed by law, where the defect may be discovered. Smith v. N. Y. C. & H. R. R. R. Co., 164 N. Y. 491, 58 N. E. 655. The rule of those cases finds application here, for the reason that upon this evidence the jury would be authorized to find that reasonable inspection would have disclosed the defect which existed in the jack.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur. LAUGHLIN, J., concurs in result, on the ground that a cause of action under the employers' liability act was shown. PATTERSON, J., dissents.